**JEFFREY K. STARNES**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 3447**
**Great Falls, MT  59403**
**119 First Ave. North, Suite 300**
**Great Falls, MT  59403**
**Phone:  (406) 761-7715**
**FAX:  (406) 453-9973**
**E-mail:   Jeff.Starnes@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  Plaintiff,  vs.  **LOGAN SEA PALLISTER**  Defendant. | **CR 23-02-H-BMM**  **SENTENCING MEMORANDUM** |

## INTRODUCTION

Defendant Pallister unlawfully possessed unregistered silencers and unregistered destructive devices in violation of federal law.  Although Pallister's possession of these unregistered items standing alone is sufficient to raise the

1

Court's concern, Pallister's case presents this Court with a far more troubling motivation for his conduct.

As is detailed in the Presentence Investigation Report ("PSR"), Pallister has an unnatural and unhealthy fascination with violence, with a particular attraction to school shooters. *See* PSR ¶ 14. While working at a fast-food restaurant in Helena, he regularly harassed his coworkers, engaged in aggressive, violent, and inappropriate behavior, and discussed an ongoing fantasy to commit a Columbine-style mass shooting at a high school. PSR ¶¶ 14-16. His fixation on Columbine lead Pallister to acquire clothing and weapons that mirrored those worn by the Columbine attackers. PSR ¶ 14. He also disclosed details of how he planned to plant bombs around the school to maximize the effect of his attack and claimed to have a stockpile of firearms and ammunition. *See id.*

Pallister's apparent plan was disrupted in May 2022 when he called a juvenile female coworker over to his car outside of the fast-food restaurant to "show her something." *See* PSR ¶ 15. He then removed a homemade pipe bomb from a case that was sitting on the floorboard and showed it to her. *Id.* The juvenile female later reported that Pallister threatened to kill her if she told anyone about what Pallister showed her that day. *Id.* Although Pallister disputes making this threat, the female reported the incident to law enforcement.

2

The next morning, at approximately 4:00 am, law enforcement arrested Pallister near his home in Helena.  PSR ¶ 17.  At the time, he was wearing a black trench coat, was carrying a bag, and had eight loaded firearms concealed on his person, including semi-automatic pistols and AR-style rifles equipped with high-capacity magazines.  *Id.*  Following his arrest, law enforcement searched his car and recovered nine-additional firearms, miscellaneous firearms accessories, body armor, trigger modification systems designed to increase the fire-rate of firearms, an ammunition cannister containing four homemade pipe bombs, and an oil filter modified to function as a silencer.  PSR ¶¶ 18-19.  A search of Pallister's apartment revealed a large quantity of ammunition, additional firearms parts, and materials used to make homemade explosives.  PSR ¶ 20.

Pallister's conduct is exceptionally serious and places his case well beyond defendants whose mere possession of unregistered firearms runs afoul of federal law.  The United States thus urges to the Court to consider an upward variance in this case and impose a sentence that includes 114 months of imprisonment and six years of supervised release.

### THE PRESENTENCE INVESTIGATION REPORT

There are no objections to the PSR.  *See* PSR Addendum.  Pallister's total offense level is 23 and his criminal history category is I.  PSR ¶ 84.  This results in an advisory guideline imprisonment range of 46-57 months.  *Id*.

## SENTENCING ANALYSIS

Section 3553(a) of Title 18 of the United States Code contains prefatory language —"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Those purposes include the need for the sentence to:

- reflect the seriousness of the offense;
- promote respect for the law;
- provide just punishment for the offense;
- afford adequate deterrence to criminal conduct;
- protect the public from further crimes of the defendant; and,
- provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) sets forward additional considerations for the Court when imposing an appropriate sentence. "[T]he nature and circumstances of the offense and the history and characteristics of the defendant" and the "kinds of sentences available" should be considered. 18 U.S.C. § 3553(a)(1),(3). The Court should similarly consider the sentencing guidelines and policy statements, as well as "the need to avoid unwarranted sentencing disparities." 18 U.S.C. §3553(a)(4),(5),(6).

## ARGUMENT

Pallister's crime is unquestionably serious. As this Court well-knows, crises involving active shooters and other threats to schools continue to have a significant impact on schools, and even a false report of an active shooter requires an immediate, typically traumatizing response. *See Educator's in School Safety Network*, 2022-2023 Violence in Schools Report, available at: https://eschoolsafety.org/violence#:~:text=There%20were%2055%20shootings%20on,6.1%25%20of%20all%20violent%20occurrences (last accessed April 25, 2024). As the findings in this report show, and there is no such thing as a harmless threat to a school.

Here, it is hard to conclude that Pallister's threats were "harmless." What sets him apart is his demonstrated ability to follow through on his threat. More than just idle chatter, Pallister meticulously set about stockpiling an arsenal to carry out his plan: dozens of semi-automatic firearms and components designed to produce maximum lethality, body armor, pipe bombs, thousands of rounds of ammunition, and clothing that mirrored clothing worn by the Columbine attackers—all the materials needed to carry out the object of his deranged fantasy.

To be clear, the United States cannot unequivocally tell this Court that Pallister was on his way to carry out an attack the morning he was arrested. In fact, additional parts to manufacture more pipe bombs arrived at his home several

days after his arrest, indicating he was probably still in the preparation phase of his plan.  *See* PSR ¶ 21.  What is clear, however, is that Pallister had both the stated desire to carry out an attack and was methodically acquiring everything he would need to achieve his aim.  In short, Pallister had clearly set in motion a chain of events that likely would have ended in tragedy.  Fortunately, his coworker had both the foresight and the courage to disregard Pallister's threats and report his concerning behavior to law enforcement.   It was that decision, more than any other, that likely disrupted Pallister's true motivation for possession unregistered firearms.

    A mere guideline sentence here is simply insufficient to address the seriousness of this offense, or to punish Pallister for his actions, or to deter others who harbor similar ideas, or to even get Pallister mental health treatment that is clearly needed.  Instead, the United States strongly urges the Court to vary upward by doubling the guideline range here.  To be sure, this recommendation represents a severe punishment for the possession of unregistered firearms.  But on the other hand, Pallister's conduct here presented the potential for severe tragedy.

     By sentencing Pallister to 114 months of imprisonment, followed by six years of supervised release, the Court will send a clear message to Pallister and anyone who hears about this case, that any conduct involving threats to injure or kill others will result in severe consequences for the perpetrator.  Moreover, the

Court will send a clear message to the public that the safety of the community is paramount, and the federal system will protect the public from those who intend to inflict harm upon it. Finally, such a sentence will ensure that Pallister gets the mental health treatment he clearly needs and will allow the Court maximum time to ensure that upon his release, he suitably transitions to becoming a peaceful and law-abiding citizen.

      DATED this 8th day of May 2024.

                                     JESSE A. LASLOVICH
                                     United States Attorney

                                   */s/ Jeffrey K. Starnes*
                                   JEFFREY K. STARNES
                                   Assistant U.S. Attorney
                                   Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule, this certifies that the body of the attached response contains 1,208 words, excluding the caption and certificate of compliance.

                                            JESSE A. LASLOVICH
                                            United States Attorney

                                            */s/ Jeffrey K. Starnes*
                                            JEFFREY K. STARNES
                                            Assistant U.S. Attorney
                                            Attorney for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2024, a copy of the foregoing document was served on the following persons by the following means:

    (1, 2)  CM/ECF
    ( )     Hand Delivery
    ( )     U.S. Mail
    ( )     Overnight Delivery Service
    ( )     Fax
    ( )     E-Mail

1.   Clerk, U.S. District Court

2.   Shena Roath
     Federal Defenders of Montana
     Attorney for Defendant

                                         */s/ Jeffrey K. Starnes*
                                         Assistant U.S. Attorney
                                         Attorney for Plaintiff